UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BRIDGESTONE FIRESTONE
NORTH AMERICAN TIRE, LLC.                                    PLAINTIFF

VS.                                      CIVIL ACTION NO. 4:08CV88TLS-LRA

J&J TIRE COMPANY, L.L.C.,
JIMMY D. WHITE, JERRY W.
ROBINSON, JOAN WHITE AND
KAREN ROBINSON                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants to dismiss or, in the alternative, to compel mediation and arbitration. Plaintiff Bridgestone Firestone North American Tire has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the parties have entered a mediation and arbitration agreement which covers all of plaintiff's claims herein, and that therefore, defendants' request for an order dismissing this case and compelling mediation/arbitration is well taken.

According to Bridgestone's complaint in this cause, J&J Tire Company (J&J) was an independent dealer of Bridgestone tires at two locations in Mississippi, one in Forest and one in Taylorsville. The parties operated pursuant to an Affiliated Dealer Agreements entered between the parties, under which J&J would purchase tires from Bridgestone for retail sale at its stores. These agreements incorporated Bridgestone's Government

Sales Policy, pursuant to which J&J was to sell tires to government agencies and entities at a discounted price and tax-free but was entitled to receive reimbursement from Bridgestone for the amount of the discount and taxes J&J had paid on the tires.  In this action, Bridgestone has asserted claims of fraud, negligent misrepresentation and breach of contract against J&J based on allegations that between 2002 and 2004, J&J submitted false and inflated requests for reimbursement pursuant to the Government Sales Policy and as a result, received reimbursements to which it was not entitled.  Specifically, Bridgestone has alleged that J&J sought reimbursement under the Government Sales Policy for at least 1754 more tires than were actually sold under the policy.  In addition, Bridgestone has claimed that J&J breached the parties' agreement by refusing to pay $132,450 it owes for products it has received from Bridgestone.

In addition to suing J&J, Bridgestone has also named as defendants Jimmy White, Joan White, Jerry Robinson and Karen Robinson, who owned and operated the J&J locations, and who are alleged to have executed unconditional guarantees related to the operation of J&J, by which they "jointly and severally, absolutely and unconditionally guarantee[d] full payment when due . . . of all liabilities, obligations and indebtedness" of J&J, "whether now existing or hereafter arising and regardless of how evidenced or arising...."  Bridgestone alleges that these individual defendants committed the same tortious acts as J&J and hence are

2

jointly and severally liable to Bridgestone pursuant to Mississippi Code Annotated § 85-5-7(4), and that they are also jointly and severally liable to Bridgestone by virtue of their unconditional guarantees.

All defendants have moved to compel mediation or arbitration in accordance with the mediation/arbitration provision in their Dealer Agreements, which provides:

> Except for controversies, disputes or claims related to any alleged breach of Paragraph 14, all controversies, disputes, or claims between you and BFS arising out of or relating to:
>
> a. This Agreement or any other agreement between you and BFS or any provision of any such agreement;
> b. BFS' relationship with you;
> c. Any aspect of the Affiliated Dealer Program; or
> d. The validity of this Agreement or any other agreement between you and BFS or any provision of any such agreement
> which cannot be settled through negotiation, will first be submitted by the parties to mediation at a mutually agreeable location... under the Commercial Mediation Rules of the American Arbitration Association. If the parties are unable to resolve the dispute through mediation, then the dispute will be submitted for binding arbitration to the Chicago, Illinois office of the American Arbitration Association on demand of either party.

"In adjudicating a motion to compel arbitration under the [FAA], courts generally conduct a two-step inquiry. The court must first determine whether the parties agreed to arbitrate the dispute. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. The court then must

3

determine if any legal constraints foreclose arbitration of those claims." Brown v. Pacific Life Ins. Co., 462 F.3d 384, 397 (5th Cir. 2006) (internal citations omitted). "The FAA expresses a strong national policy in favoring arbitration of disputes, and all doubts concerning arbitrability of claims should be resolved in favor of arbitration." Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).

Defendants maintain in their motion that the subject mediation/arbitration agreement in the Affiliated Dealer Agreements is valid, and that all claims asserted in Bridgestone's complaint against J&J fall squarely within the scope of that provision so that J&J is entitled to an order compelling mediation/arbitration according to the terms of the parties' agreement. They argue that the individual defendants are likewise entitled to invoke the mediation/arbitration provision, as they are alleged to have committed the same wrongs as J&J and to have acted in concert with J&J. See Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 537 (5th Cir. 2000) (nonsignatory may compel signatory to arbitrate when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract" or where the signatory "must rely on the terms of the written agreement in asserting its claims against the nonsignatory").

4

In response to defendants' motion, Bridgestone does not dispute the validity of the mediation/arbitration agreement. Indeed, it concedes the agreement is valid, and concedes, as well, that its breach of contract claim against all defendants for failure to pay for tires is subject to the mediation/arbitration agreement. Accordingly, it expressly consents to mediation/arbitration of that specific claim. Bridgestone submits, however, that the remaining claims are beyond the scope of the mediation/arbitration agreement. Citing Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney, 950 So. 2d 170 (Miss. 2007), Bridgestone insists that its claims for fraud, negligent misrepresentation and breach of contract relating to defendants' submission of false and inflated claims were not within the contemplation of the parties at the time they entered the mediation/arbitration agreement and that it therefore cannot be compelled to mediate/arbitrate these claims.

In Rogers-Dabbs, Blakeney executed an arbitration agreement in connection with his purchase of a vehicle from Rogers-Dabbs Chevrolet-Hummer in which he agreed to submit to arbitration "all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to" the transaction, including negotiations, financing arrangements, extended warranties, performance of the vehicle, "or any other aspect of the vehicle and its sale, lease, or financing." Id. at 174. Blakeney subsequently sued Rogers-Dabbs, alleging that

5

employees of the dealership had misappropriated the title to his vehicle, had forged his name on numerous fake titles to facilitate their sale of stolen vehicles, and had engaged in identity theft in furtherance of an ongoing criminal enterprise. In considering whether these claims were covered by the arbitration agreement, the court held that while claims related to the sale of the vehicle were covered, the arbitration provision did not extend to the scheme involving forgery, sale of stolen vehicles, and identity theft. The court wrote:

> While Blakeney no doubt agreed to arbitrate claims that originated from the sale of the vehicle or related to the sale of the vehicle, no reasonable person would agree to submit to arbitration any claims concerning a Hummer to which he would never receive a title; a scheme of using his name to forge vehicle titles and bills of sale to sell stolen vehicles; and the commission of civil fraud against him by misappropriating his title to the Hummer he purchased and forging his name on fake titles and bills of sale on various stolen vehicles– actions of which Blakeney was presumedly totally unaware at the time of the execution of the documents in question, including the arbitration agreement.

Id. at 177-78.

Seizing on the court's statement that "no reasonable person would agree to submit to arbitration any claims concerning ... the commission of civil fraud against him," Bridgestone offers Rogers-Dabbs for the proposition that "claims of civil fraud are not subject to arbitration, even when then arbitration agreement at issue is broad." However, Rogers-Dabbs cannot bear the weight of Bridgestone's reliance, for the case clearly does not hold that civil fraud claims necessarily fall outside of arbitration

6

provisions. The court in Rogers-Dabbs made clear that it did not view its decision as undermining that court's "long line of cases ... undergirding the federal policy favoring arbitration," id. at 178, and that it was merely excluding from arbitration specific fraud claims which Blakeney asserted fell outside the scope of that particular arbitration agreement. Id. at 178, n.9. See Hemphill v. Coldwell Banker Real Estate Corp., 2007 WL 3244793, 3 (N.D. Miss. 2007) (distinguishing Rogers-Dabbs and concluding that "given the extremely broad language of the arbitration agreement in this case, the plaintiffs' (fraud) claims against State Bank clearly fall within the scope of the agreement").

The nature of the fraud alleged by Bridgestone in this case is hardly comparable to that involved in Rogers-Dabbs. In Rogers-Dabbs, Blakeney's fraud-based claims did not relate to his purchase of the vehicle from Rogers-Dabbs, which was what the arbitration agreement covered; rather, the claims involved Rogers-Dabbs' employees' post-sale fraudulent scheme to use Blakeney's identity and documents in a criminal enterprise involving the sale of stolen vehicles. Here, in contrast, the alleged fraud arises from and/or relates directly to the parties' relationship and to a specific aspect of the Affiliated Dealer Program, namely, the Government Sales Policy, and in the court's opinion, the claims

fall directly within the scope of the mediaton/arbitration agreement.[1]

Based on the foregoing, the court concludes that defendants are entitled to an order compelling arbitration. The court will therefore grant defendants' motion to dismiss. In so doing, the court acknowledges Bridgestone's argument that defendants' motion to dismiss is "procedurally flawed" because it seeks outright dismissal of the case rather than a stay pending mediation/ arbitration, given that 9 U.S.C. § 3, by its terms, provides only for a stay, not dismissal, even when all claims in a case are subject to mediation/arbitration. In fact, however, defendants' request to dismiss is on solid procedural footing. The Fifth Circuit has explicitly held that "district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3." Fedmet Corp. v. M/V BUYALYK, 194 F.3d 674, 676 (5th Cir. 1999)

---

[1] This case would be more analogous to a claim that an automobile dealer misrepresented the year model, mileage or some other condition of the vehicle to obtain a higher price; and had Rogers-Dabbs involved such a claim, there is little doubt that the court would have held it was subject to arbitration. Misrepresentations of this type relate directly to the sale/purchase of the vehicle, and while a buyer may not expect the dealer to make these kinds of misrepresentations, it must be within his contemplation that this kind of misrepresentation could occur and that if it does, it would be covered by his arbitration agreement (though the same could not be said of a scheme by the dealer's employees to steal the buyer's personal information and forge his name and information on fraudulent documents to sell stolen vehicles.) It should likewise have been within Bridgestone's contemplation that if defendants submitted fraudulent requests for reimbursement under Bridgestone's Government Sales Policy, Bridgestone would have to pursue a remedy in accordance with the parties' mediation/arbitration agreement.

(citing <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992)); <u>Westervelt v. Bayou Management, L.L.C.</u>, 2003 WL 22533672, 3-4 (E.D. La. 2003) ("While § 3 of the FAA states that a court shall 'stay' judicial proceedings where the dispute is referable to arbitration, it does not expressly prohibit or even reference dismissal[,] [and] [a]s such, it has been held that district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3, if it is determined that all the issues raised are arbitrable.") (also citing <u>Alford</u>). Given that all claims herein are subject to arbitration, the court finds there is no practical reason for staying the case, rather than dismissing.

Accordingly, it is ordered that defendants' request for dismissal is granted.

SO ORDERED this 5th day of February, 2009.

/S/Tom S. Lee
UNITED STATES DISTRICT JUDGE